### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**ROBERT W. AVERY**                                                   **PLAINTIFF**
**ADC #652373**

**v.**                           **No: 4:21-cv-00035 JM-PSH**

**WELLPATH HEALTH CARE,** *et al.*                         **DEFENDANTS**

### PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Robert W. Avery filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on January 14, 2021, while incarcerated at the Arkansas Division of Correction's Wrightsville Hawkins Unit for Males (Doc. No. 1). On February 1, 2021, the Court granted Avery's application to proceed *in forma pauperis* and

directed him to amend his complaint to clarify his claims (Doc. No. 6). Avery filed an Amended Complaint on February 24, 2021 (Doc. No. 7) and a Second Amended Complaint on February 15, 2022 (Doc. No. 68). Avery alleges that he was denied adequate medical care by defendants Dr. Melanie Jones, APN Marie E. Lane, Health Services Administrator ("HSA") Vesta Mullins, and LPN Vickie Jackson following an ankle injury on July 5, 2019, in part due to the policy and practice of defendant Wellpath Health Care ("Wellpath").[1]  Doc. No. 68 at 6-23. He brings Eighth Amendment deliberate indifference claims as well as state law negligence claims. *Id.* at 24.

Before the Court is a motion for summary judgment and statement of facts filed by Avery (Doc. Nos. 70-71), responses filed by defendants Wellpath, Dr. Jones, APN Lane, HSA Mullins, and LPN Jackson (the "Defendants") (Doc. Nos. 73-74), and a reply filed by Avery (Doc. No. 80). The Defendants also filed a motion for summary judgment, brief-in-support, and statement of facts (Doc. Nos. 76-78). Avery filed a response and statement of facts (Doc. Nos. 83-84). For the reasons set forth in this Recommendation, the undersigned recommends that the

---

[1] In his amended complaint, Avery alleged that LPN Tamara Hopson and LPN Louise Patterson were deliberately indifferent to his serious medical needs and that Hopson, Patterson, Health Services Administrator Blake, Sergeant White, and Scott McLean retaliated against him for filing grievances relating to his medical care. Doc. No. 7 at 21-24. Avery subsequently dismissed those claims. *See* Doc. Nos. 47 & 48. Avery also asserted certain dental claims in his Amended Complaint which were dismissed on screening. *See* Doc. Nos. 9 & 32.

Defendants' motion for summary judgment be granted and Avery's motion for summary judgment be denied.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .".  Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a

fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## III. Facts[2]

On July 5, 2019, Avery injured his right ankle while playing volleyball. Doc. No. 78-1 at 1. Avery was seen in the Health Services Clinic and examined by defendant Vicki Jackson, LPN, who observed swelling and noted that Avery reported a pain level of 10 out of 10, blood pressure of 113/114, impaired physical mobility, a visible deformity, and a capillary refill greater than three seconds. Distal pulses were patent. *Id.* Defendant Dr. Melanie Jones gave a verbal order for ibuprofen, crutches, an ace bandage wrap, ice packs, and a five-day no duty restriction. *Id.* at 2. Although Defendants represent Dr. Jones ordered an X-ray at this encounter, *see* Doc. No. 78 at ¶ 2, the medical record does not contain such an order.

Avery submitted grievance WHM19-00062 three days later, on July 8, 2019. Doc. No. 71-1 at 5. He grieved:[3]

> On July 5, 2019 I suffered an injury on the PTF yard. This injury was my right ankle. This injury being so severe and painful I could not walk, no stretcher, or wheelchair was sent to pick me up, 2 inmates had to carry me into the PTF laundry and place me on a hose cart to take me into medical due to the inadequacies in medical equipment provided by Wellpath (CCS) to the PTF medical. My pain was

---

[2] Unless otherwise noted, these facts are taken from the parties' statements of undisputed facts (Doc. Nos. 71-2, 74, 78 & 84) and the exhibits, including Avery's medical records, provided by the parties (Doc. No. 71-1 & 78-1 – 78-16). Opinions and legal conclusions are omitted.

[3] Grievances are transcribed verbatim without any corrections for misspellings or mistakes; however, unnecessary capitalization has been removed.

compounded by the failure of Wellpath (CCS) to have adequate medical supplies.  My ankle and foot have caused continuous pain and suffering.  This injury has extensive swelling on it I have not seen a DR.   Nor have I received X-rays The healthcare policy used has resulted in deliberate indifference to my pain, suffering, and known serious medical issue.  Furthermore Dr. Jones would not send me to the E.R.

*Id.*[4]

Avery was seen by defendant Maria Lane, APN, on July 8 for his complaints of an injured right foot.  Doc. No. 78-4.  Lane observed Avery's foot to be swollen with some pain and ordered acetaminophen, crutches, an ace bandage wrap, elevation "at all times," and no duty for 14 days as treatment.  She assessed Avery as having a "suspected fx of the R ankle," and documented his elevated blood pressure readings.  *Id.*  Lane ordered X-rays of Avery's foot, not ankle, which were taken that day.  Doc. No. 78-3.  The X-rays revealed no fracture or dislocation, and

---

[4] On July 10, 2019, Tamara Hopson responded to Grievance WHM19-00062, stating, "You were evaluated by the APN on 7/8/19 for your injury.  You were ordered an X-ray on the same date this grievance was wrote.  Once results are received after the X-ray is taken, then further protocol will be necessary."  Doc. No. 71-1 at 5.  Defendant HSA Vesta Mullins responded to Avery's Step Two grievance on August 14, 2019.  *Id.* at 6.  She described the care he received on July 5 and 8, noted that he had been given a no duty script and provided with accommodations, and found his grievance without merit.  *Id.* Avery appealed, and Director Rory Griffin found his appeal with merit because nursing protocol had not been followed on July 5, and Avery was not seen by a provider until July 8.  *Id.* at 7.  Although unclear, it appears that protocol was not followed because Avery had not been seen by a provider until July 8.

Avery was notified on July 12, 2019, at 3:17 p.m. that no follow-up was warranted.[5]  *Id.*

APN Lane ordered X-rays of Avery's right ankle on July 12, 2019.  Doc. No. 71-1 at 79.  The ankle X-rays, which were interpreted on July 12, revealed an acute avulsion fracture of the lateral malleolus.  Doc. No. 78-5.  Avery was notified on July 17, 2019, at 5:12 p.m. that he would be scheduled for a follow-up within five working days because of the X-ray findings.  *Id.*  Avery claims he told Lane on July 12 that the crutches given to him on July 8 were substandard; that one was tall, one was short, and both had torn rubber skid stops.  Doc. No. 71-2 at ¶ 8.  He claims he was told he would receive a new pair but did not.  *Id.*; Doc. No. 84 at ¶ 8.  He submitted grievance WHM19-00065 on July 16, 2019, regarding the crutches, the July X-rays, and the care of his ankle.  Doc. No. 71-1 at 9.  On July 17, he was told he would receive a new pair of crutches in response to his Step One grievance.  *Id.*  Defendants dispute that the crutches provided to Avery were substandard.  Doc. No. 74-1 at ¶¶ 8, 11.

On July 17, 2019, Avery had a follow-up visit with APN Lane related to the fracture diagnosis.  Doc. No. 78-6.  His ankle was placed in a splint for six weeks (until September 4, 2019).  *Id.*  Lane provided Avery instructions for care of the

---

[5] In his response to the Defendants' statement of facts, Avery implies that he received this message after his *ankle* X-ray on July 12.  Doc. No. 84 at ¶ 7.  The record for the July 8 foot X-ray makes clear he was sent this message regarding the July 8 *foot* X-ray.

splint, as well as a plastic bag to keep the splint dry, and crutches. *Id.* Lane also ordered no duty for 50 days, no sports activities for 50 days, and no yard call for 50 days. He was told to elevate his right leg. *Id.* Avery agrees that he had two usable crutches after this July 17 appointment. Doc. No. 71-2 at ¶ 11 (stating than from July 5 to July 17, he had only one usable crutch). He claims that he received a splint for his ankle on July 17 because he filed grievance WHM19-00065. *Id.* at ¶ 9. Defendants state there is no evidence the issuance of the splint was motivated by Avery's grievance. Doc. No. 74-1 at ¶ 9.

On July 30, 2019, Avery submitted grievance WHM19-00071 regarding his plaster cast.[6] Doc. No. 71-1 at 13. He stated that the cast required a plastic bag and tape but because he had not received any tape in three days, his cast got wet in the shower. *Id.* He was told he needed to request tape from medical staff before his shower. *Id.* Avery claims he reported damage to his cast to Wellpath employee Jesse James, LPN on at least two occasions. Doc. No. 71-2 at ¶ 10. Defendants do not dispute this, but there is no documentation in the record of any complaints regarding the cast other than grievance WHM19-00071.

Avery's cast and crutches prescription expired on September 4, 2019; he returned his crutches to medical. Doc. No. 71-2 at ¶ 12. He did not have an appointment scheduled to remove the cast. *Id.* at ¶ 13. He apparently removed the

---

[6] The terms cast and splint are referred to interchangeably by the parties. The Court will refer to the device as a cast going forward.

cast himself that same date, and maintains he was forced to remove his cast and to work that same night because his no-duty prescription had expired.  *Id.* at ¶ 14; Doc. No. 71-1 at 36-37 (showing no-duty prescription expired on September 4, 2019, and was not re-instated until September 16, 2019).  Defendants dispute that there was any medical need to remove the cast on that day.  Doc. No. 74-1 at ¶ 14.

Avery submitted grievance WHM19-00084 on September 4, 2019, stating:

> Today 9/4/19 my script ran out for my cast-splint, crutches, lay-in etc. that were a part of my treatment for an ankle fracture, avulsion, etc.  I had to remove this cast myself.  I have had no check-up or X-rays taken to ensure proper healing.  My ankle is still swollen, bruised and painful.  LPN James made (2) medical notes as to how my splint-cast was in need of stabilization etc.  Nothing was done.  As today shows the care being given to me for my ankle has been left wanting since July 5, 2019 as I stated above, my ankle is still swollen, bruised and painful.

Doc. No. 71-1 at 17.[7]  *Id.*

On September 5, 2019, the day after he filed his grievance, Lane noted that Avery needed "a new x ray" of the ankle, and documented that the X-rays were scheduled for the following day, September 6.  Doc. No. 78-7; Doc. No. 78-8. The new X-rays revealed "a fracture involving distal fibula with no displacement.

---

[7] Hopson responded on September 6, "You were not supposed to remove the cast. X-ray was completed the morning of 9/6/19.  Your check-up was scheduled to be completed after X-ray has resulted.  It was not your responsibility to remove the cast. Once results are received further tx can be done." Doc. No. 71-1 at 17.  After receiving a Step Two response from Mullins reviewing his ankle treatment, Avery appealed, specifically noting the lack of an appointment to have his cast removed.  *Id.* at 18. Griffin found Avery's appeal with merit because of a lack of documentation concerning a follow up for Avery's cast removal.  *Id.* at 20.

The joint alignment is maintained. There is associated soft tissue swelling." Doc. No. 78-8.[8]

On September 6, 2019, Avery submitted a health service request, stating "ON 9-4-19 my cast-splint was to be removed by medical. It was not. I had to remove it myself because medical failed to do so. My ankle is still bruised and swollen and painful. I am also being forced to work on this ankle." Doc. No. 71-1 at 54. The same day, he returned to the Health Services Clinic and again reported removing his own cast on September 4. He also reported bruising, swelling, and pain in his ankle, and complained of being forced to work on it. Doc. No. 78-9. LPN Jackson observed continued swelling and bruising. She documented localized tenderness, pain with range of motion, limited weight bearing, and a capillary refill of greater than three seconds. *Id.* APN Lane gave verbal orders for 600 mg ibuprofen two times daily as needed for pain. She also ordered no duty for 30 days and an ace bandage for compression. *Id.*

On September 16, 2019, Avery had another follow-up visit with APN Lane. He again complained about having to remove his cast. Doc. No. 71-1 at 73-74. Lane's note documents that she gave Avery at this visit a no-duty restriction until

---

[8] The report indicates that Avery was informed via kiosk message on September 24, 2019, that the September 5 X-ray results had been reviewed and there was no clinical need for follow-up. Doc. No. 78-8. The message notified him that if he wanted to discuss the results of the X-rays, he could submit a sick call request or a request for interview with the Health Services Administrator. *Id.*

October 18, 2019.  *Id.*  Lane references the September 6 X-rays in her record, describing the distal fibula fracture, and stating that the joint alignment was maintained but there was associated soft tissue swelling.  She also noted that Avery had palpable pedal pulses bilaterally with some edema to both ankles.[9]  *Id.*  Avery was not provided with crutches at either September 2019 appointment.  Doc. No. 84 at ¶ 17; Doc. No. 71-2 at ¶ 17; Doc. No. 74-1.

On October 7, 2019, Avery saw APN Lane and complained of continuing pain in his ankle and that "if he steps a certain way, it will bother him."  Doc. No. 78-10.  On examination, Lane observed that Avery continued to have "a little" swelling in the right leg, but no issues with Avery's gait.  *Id.*  Avery was provided with ibuprofen and Lane noted that new X-rays were scheduled to be taken the following week.  *Id.*

As planned, follow-up X-rays were taken the following week, on October 14.  The X-rays were read on October 18, and the findings included a "fracture involving distal fibula with no displacement.  The joint alignment is maintained.

---

[9] It is unclear whether Lane discussed the X-ray results with Avery at this visit. The records do indicate that Avery received a kiosk message on September 24 that his X-ray results had been reviewed, see Doc. No. 78-8, and that he could submit a sick call request if he wanted to discuss the results.  Avery maintains that he did not receive notice of the September 6 X-ray results until October 21, 2019.  *See* Doc. No. 84 at ¶ 18. He complained in a grievance filed October 10, however, about becoming aware of the September 6 X-ray results on October 9.  Doc. No. 71-1 at 21.

There is associated soft tissue swelling."[10]  Doc. No. 78-11. A kiosk message was sent to Avery on October 21 notifying him that the results of the X-rays had been received, and there was no clinical need for follow-up.  *Id.*  Avery was advised to submit a sick call request to discuss the test results with a member of the health care staff, or to submit a request for interview with the Health Services Administrator.  *Id.*

On October 21, 2019, Avery was seen by LPN Lane.  Doc. No. 78-12.  He reported soreness when stepping on his foot and that he had been walking on it. Lane observed that Avery continued to have some swelling.  *Id.*  She referenced the previously diagnosed distal fibula fracture with no displacement and maintained joint alignment.  *Id.*  She contacted Dr. Melanie Jones about the appropriate course of action, and Jones recommended an orthopedic consult.  *Id.* Lane continued the no duty restriction until November 4.  *Id.*

On November 6, 2019, Avery was seen at the University of Arkansas for Medical Sciences ("UAMS") by Rachel Lyle, APRN, CNP.  Doc. No. 78-13.  Lyle examined Avery's right ankle, noting tenderness with palpation to the lateral and anterior ankle, no tenderness medially, minimal if any diffuse swelling, and palpable pulses.  *Id.*  She further stated that "[r]esisted dorsiflexion, plantar flexion,

---

[10] Avery contends this X-ray was taken on October 18.  *See* Doc. No. 83 at 4.  The record states it was taken on October 14 with the results processed on October 18.  Doc. No. 78-11.  The precise date this X-ray was taken is not material to the outcome of this case.

and eversion reproduce pain, no pain with inversion.  Strength and range of motion testing decreased compared to the contralateral side and exam is limited due to pain overall." *Id.*  Lyle viewed the X-rays and agreed that Avery suffered from an ankle fracture as revealed in the July 12 X-rays.  *Id.*  Avery was placed in a walking boot for six weeks and was told he may weight bear as tolerated to pain. *Id.*  He was to return for a follow-up one month after receiving an MRI.  *Id.*

On December 11, 2019, Avery returned to UAMS for a follow-up appointment with Lyle and an MRI.  Doc. No. 78-14.  Avery reported no improvement.  *Id*.  The MRI report states:

> Impression:
>
> Osteochondral defects of the lateral talar dome measuring up to 0.5 x 1.6 cm.  Depression and edema of the anterior tibial plafond, which may represent a fractured osteophyte versus osteochondral fracture.
>
> Acute tears of the anterior tibiofibular ligament and deep fibers of the deltoid ligament. Sprain of the anterior and posterior talofibular ligaments, calcaneofibular ligament, and deep fibers of the spring ligament.
>
> Mild thickening of the plantar fascia and a large plantar calcaneal enthesophyte, compatible with acute or chronic plantar fasciitis.
>
> Tibiotalar and subtalar effusions.
>
> Remote fracture of the anterior process of the calcaneus and injury to the talonavicular ligament.

Doc. No. 71-1 at 96.  Lyle reviewed the MRI results with Avery and told him that "[s]urgically Dr. Martin can offer him ankle scope to remove the OCD

(osteochondritis dissecans)." Avery agreed to proceed with surgery. Doc. No. 78-14.

On March 4, 2020, Avery underwent an ankle arthroscopy and removal of an osteochondral lesion at UAMS. Doc. No. 78-15. He was instructed to elevate his ankle and apply ice for 72 hours, to wear a boot on his ankle, and to not bear weight. Doc. No. 71-1 at 105. He was prescribed hydrocodone-acetaminophen 5-325 mg per tablet for 10 days, *id.* at 109, but maintains Lane only allowed him to have Tylenol 3 for three days. Doc. No. 71-2 at ¶ 47.

On December 3, 2020, Avery was seen for a follow-up at UAMS; he was noted to have progressed well following surgery and had no restrictions to his activities. Doc. No. 78-16.

### *Dr. Thomas Braswell Affidavit*

In support of their motion for summary judgment, the Defendants submitted the affidavit of Dr. Thomas Braswell, a family practice and emergency medicine physician. Doc. No. 78-2 at ¶ 1. Dr. Braswell reviewed Avery's medical records regarding the treatment of his right ankle injury in 2019. *Id.* at ¶ 3. According to Dr. Braswell, the care and treatment Avery received for his ankle injury was appropriate, adequate, and timely. *Id.* at ¶¶ 4-8 & 14. Dr. Braswell explained that it is not that unusual to have an unresolved fracture three months post injury. *Id.* at ¶ 8.

## IV.  Analysis

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody.  *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976).  To succeed with an inadequate medical care claim, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs.  *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it.  *Id.; see also Farmer v. Brennan,* 511 U.S. at 837; *Estelle v. Gamble,* 429 U.S. 97, 105 (1976).

Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Finally, an inmate alleging that a delay in medical treatment constitutes deliberate indifference is required to "'place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'"  *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).  If the inmate does not, he fails to raise a genuine issue of fact on an essential element of his claim, and summary judgment is appropriate.  *Id.  See also*

*Corwin v. City of Independence, MO*, 829 F.3d 695 (8th Cir. 2016) (summary judgment appropriate where pretrial detainee failed to produce verifying medical evidence showing a detrimental effect due to delay in treating fractured wrist).

The undisputed material evidence in the record fails to establish that any defendant was deliberately indifferent to Avery's serious medical needs. The Court will summarize the evidence as to each individual defendant as follows.

### *Jackson, Jones, and Lane*

**LPN Vickie Jackson:** Jackson saw Avery two times. She evaluated Avery's ankle on July 5, 2019, the same day he injured his ankle. She consulted with Dr. Jones, who ordered ibuprofen, crutches, an ace bandage wrap, ice packs and a five-day no duty restriction. Jackson saw Avery again on September 6, 2019, after he had removed his cast. She documented swelling, bruising, tenderness, pain with range of motion, limited weight bearing, and capillary refill greater than three seconds. She obtained orders for ibuprofen, an ace bandage, and no duty for 30 days.

**Dr. Melanie Jones:** On July 5, 2019, Jones ordered ibuprofen, crutches, an ace bandage wrap, ice packs and a five-day no duty restriction after being contacted by Jackson. On October 21, 2019, she ordered an orthopedic consult.

**APN Marie Lane:** Lane had the most contact with Avery. She first saw Avery on July 8, 2018, three days after his injury. Avery complained of an injury

to the right foot, and she ordered acetaminophen, crutches, an ace bandage wrap, elevation at all times, no duty for 14 days, and X-rays of Avery's foot.  She diagnosed a suspected right ankle fracture.  It is unclear why she ordered X-rays of Avery's foot when she suspected a fracture of the ankle. However, Lane ordered X-rays of Avery's ankle four days later, on July 12, and saw him on July 17 for follow up after X-rays confirmed an ankle fracture.  She placed a cast on his ankle, provided instructions about how to take care of it, told him to elevate his right leg, and provided crutches as well as 50-day restrictions on sports, work and yard call.

On September 5, 2019, after Avery had removed his cast, Lane ordered new ankle X-rays. On September 16, she gave him an additional no-duty prescription until October 18 based on the results of the September 6 X-rays, which showed the fracture with joint alignment maintained and soft tissue swelling.  When he continued to complain of pain on October 9, 2019, Lane documented a little swelling, provided Avery with ibuprofen, and ordered additional X-rays.  On October 21, Avery again complained of soreness when stepping on the foot and Lane documented some swelling.  She referenced that the most recent X-rays revealed the same ankle fracture.  At that point, Lane contacted Dr. Jones, who recommended an orthopedic consult.

The actions of Jackson, Lane, and Dr. Jones in treating Avery's ankle simply do not evidence deliberate indifference to an inmate's serious medical needs.  All

three responded to Avery's symptoms, documented their actions and evaluations, and took some sort of action.  Avery's opinion that he needed emergency treatment on July 5 or care by a specialist thereafter merely constitutes a disagreement with the defendants' treatment decisions and fails to rise to the level of a constitutional violation.  Furthermore, Avery has not produced evidence that emergent hospital treatment on July 5 or even additional testing or treatment by specialty providers would have lessened his injury or produced a different result.  *See Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (holding that an inmate must produce verifying medical evidence to show the detrimental effect of a delay in medical treatment to avoid summary judgment).  The fact that he needed additional treatment in the Fall of 2019 after the initial treatment provided by defendants Jackson, Lane, and Dr. Jones does not indicate that their treatment was necessarily inappropriate, and it certainly does not mean they were deliberately indifferent to Avery's medical needs when they provided that treatment.  As Dr. Braswell explained, it is not uncommon for ankle fractures to remain unhealed several months after the initial injury.  Avery simply needed additional treatment after his initial treatment did not fully resolve his ankle fracture.

Regarding Avery's other complaints, there is no evidence that Lane, Jackson, or Dr. Jones were responsible for how he was transported to the infirmary

after his injury, initially providing him with faulty crutches (Avery received new crutches five days after he informed Lane his were faulty), or any damage to his cast. Additionally, any short delay in informing him of his X-ray results does not evidence deliberate indifference. Further, to the extent one of the defendants failed to schedule Avery to have his cast removed, that action is not evidence of deliberate indifference. Avery does not explain why he took it upon himself to remove his cast instead of submitting a request and waiting until he was seen. He was in fact seen on September 5 by Lane and on September 6 by Jackson. And while Avery's no-duty prescription may have lapsed for approximately two weeks in September 2019, there is no evidence he suffered any specific harm as a result. Finally, Avery's complaint that Lane did not provide him with as much pain medication as he was prescribed after his ankle surgery also amounts to a treatment decision. In sum, Avery has produced no verifying medical evidence to show any detrimental effect from these short delays and other issues.

### *Vesta Mullins*

Avery alleges that Vesta Mullins failed to take corrective action as health services administrator and provided incorrect information in response to his grievances. Doc. No. 68 at 19-23. However, the record shows Mullins' only involvement in Avery's care was responding to grievances and reporting what care he had received. Participation in the administrative grievance procedure alone is

insufficient to establish liability under § 1983. *See Rowe v. Norris*, 198 F. App'x 579, 580 (8th Cir. 2006). Avery must instead show that Mullins was made aware of a constitutional violation and, with deliberate indifference, failed to take corrective action or tacitly authorized the offending acts. *See, e.g., Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012). Because there is no indication that the defendants treating Avery were deliberately indifferent to his serious medical needs, there was no constitutional violation and therefore no corrective action needed. *See Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993) ("Moreover, [defendant] did not fail to take 'corrective action' for constitutional violations here because there were no predicate violations to correct in the first place."). Avery's claims against Mullins fail as a matter of law.

### *Wellpath*

Finally, Avery's claims against Wellpath also necessarily fail. A corporation acting under color of state law cannot be held liable on a theory of *respondeat superior*, but may be held liable only for its own unconstitutional policies. *Burke v. North Dakota Dept. of Corr. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002). That means that Wellpath can be held liable in this case only if "there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (quoting *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-976 (8th Cir. 1993)). Although Avery alleges Wellpath's policies

resulted in his receiving inappropriate care for his ankle injury, he has not in fact shown that a constitutional violation occurred.[11]  Accordingly, Wellpath is entitled to summary judgment.

## V.  Conclusion

For the reasons stated herein, the undersigned recommends that the Defendants' motion for summary judgment (Doc. No. 76) be granted and that Avery's motion for summary judgment (Doc. No. 70) be denied.  Avery's constitutional claims should be dismissed with prejudice.  The undersigned further recommends that the Court decline to exercise jurisdiction over Avery's pendent state law negligence claims.[12]

---

[11] *Rowe v. Stringfellow*, No. 5:19-CV-207-BSM-JTR, 2021 WL 4075597, at *5 (E.D. Ark. Aug. 16, 2021), *report and recommendation adopted,* No. 5:19-CV-00207-BSM, 2021 WL 4074459 (E.D. Ark. Sept. 7, 2021) ("Without a constitutional violation by Dr. Stringfellow, there can be no liability on the part of Wellpath.") (citing *Smith v. Kilgore*, 926 F.3d 479, 486 (8th Cir. 2019); *Schoettle v. Jefferson County*, 788 F.3d 855, 861–62 (8th Cir. 2015) ("We have long held that neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim.")).

[12] *See ACLU v. City of Florissant,* 186 F.3d 1095, 1098-99 (8th Cir. 1999) ("[W]hen state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law . . . as a matter of comity.").  *See also Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) ("The judicial resources of the federal courts are sparse compared to the states. We stress the need to exercise judicial restraint and avoid state law issues wherever possible.").

SO RECOMMENDED this 15th day of February, 2023.

_____
UNITED STATES MAGISTRATE JUDGE